IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| DANIEL W. RATHBUN, | ) | CV 12-49-M-DWM |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| INDYMAC MORTGAGE SERVICES; | ) | |
| ONE WEST BANK, FSB; and JOHN | ) | |
| DOES 1-25; | ) | |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

This case arises from a 2005 deal between Rathbun and IndyMac Bank ("IndyMac") establishing for Rathbun a home equity line of credit based on his ownership of property in Ravalli County. (Doc. 30 at 2-5.) Rathbun claims that IndyMac wrongfully encumbered <u>two</u> lots of his property (Lots 20 and 21), when he agreed only to encumbering <u>one</u> lot (Lot 20). (*Id.*) IndyMac has since released the encumbrance on Lot 21, but Rathbun claims damages based on his inability to

get other loans which, had the property not been wrongfully encumbered, would have been secured by Lot 21 at a time when the lending markets were better and when he urgently needed money. (*Id.* at 5.)

IndyMac was closed by the Office of Thrift Supervision and placed into receivership with the FDIC on July 11, 2008. (Doc. 18 at 2.) OneWest was formed on March 19, 2009, to purchase certain assets of IndyMac from the FDIC. (Doc. *Id.*, 18-1.) Rathbun has sued OneWest as IndyMac's successor in interest. (Doc. 30 at 2.)

OneWest moves the Court for judgment on the pleadings contending that the Court lacks subject matter jurisdiction over claims based on the conduct of a failed banking institution. (*Id.* at 1-2.) OneWest insists that all such claims must be handled through the FDIC's administrative claims process pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. §§ 1821 (d)(3)-(13). (*Id.* at 3.) OneWest also points out that under the agreements between the FDIC and OneWest, the FDIC expressly withheld liability for claims such as Rathbun's. (*Id.*) OneWest also argues that Rathbun must exhaust his administrative remedies and that it is shielded from any liability under the controlling agreements. The motion for judgment on the pleadings is well

taken as explained below.[1]

## II. BACKGROUND

### A. OneWest's Motion

OneWest's motion for judgment on the pleadings is dependent upon the Court taking judicial notice of certain facts derived from Office of Thrift Supervision Orders and the Agreements between FDIC and OneWest. (Doc. 18 at 4.) It attached the Office of Thrift Superivision Orders and the Agreements as exhibits to its briefing. (Doc. 18-2, 18-3.) The Agreements are also available on the FDIC's website. (Doc. 18 at fn 4 & 5.) Rathbun apparently concedes the Court can take judicial notice of these facts. (Doc. 19 at 3, 7.)

On July 11, 2008, the Office of Thrift Supervision closed IndyMac and appointed the FDIC as Receiver. (Doc. 18-2 at 3.) On the same day, the Office of Thrift Supervision authorized the creation of a new institution, IndyMac Federal Bank, FSB, into which IndyMac's assets were transferred. (*Id.* at 4.) The Office of Thrift Supervision appointed the FDIC as Conservator for IndyMac Federal. (*Id.*)

---

[1]OneWest's motion was filed in response to Rathbun's First Amended Complaint. (Doc. 4.) Rathbun filed a Second Amended Complaint, (doc. 30), because his Motion to Strike Affirmative Defenses was otherwise untimely. (See doc. 32 at 2.) OneWest asserts that the arguments made in its Motion for Judgment on the Pleadings are entirely applicable to Rathbun's Second Amended Complaint. (Doc. 36 at 2.) I agree, and for judicial efficiency, recommend dismissing all of Rathbun's claims, including the claim added in the Second Amended Complaint.

On March 19, 2009, the Office of Thrift Supervision changed the FDIC's capacity and appointed the FDIC as Receiver for IndyMac Federal. (*Id.* at 3.)

On the same day, the FDIC, in its corporate capacity and as Receiver for IndyMac Federal, transferred substantially all of the assets and only certain designated liabilities of IndyMac Federal to OneWest under a Master Purchase Agreement. (Doc. 18-3.) As part of that transaction, under the Servicing Business Asset Purchase Agreement, OneWest acquired the servicing rights to certain mortgage loans, including Plaintiff Rathbun's loans. (Doc. 18-4.)

Both Agreements transfer only designated liabilities to OneWest. For example, the Master Purchase Agreement, in a section entitled "Liabilities Not Assumed by the Purchaser" provides:

> Except for . . . liabilities expressly assumed by the Purchaser . . . the Seller shall not assign and the Purchaser shall not assume any claims, debts, obligations or liabilities (whether known or unknown, contingent or unasserted, matured or unmatured) however they may be characterized, that [IndyMac Bank], IndyMac Federal or the Seller has or may have now or in the future . . .

(Doc. 18-3 at 23, § 4.02(a).) The Servicing Purchase Agreement contains a nearly identical provision. (Doc. 18-4 at 21, § 2.04(i).)

Both Agreements also provide that the FDIC retained all liabilities subject to the receivership administrative claims processes pursuant to 12 U.S.C. §

4

1821(d)(3)-(13).  (Doc. 18-3 at 23, § 4.02(b); Doc 18-4 at 22 § 2.04(m)-(n).)

B.   **Plaintiff's Claims**

Rathbun filed his original complaint on May 29, 2009, in Ravalli County. (Doc. 3.)  In that case he named only IndyMac Financial Service, Inc. as defendant and alleged damages for Fraud, Constructive Fraud, Negligent Misrepresentation, and Slander of Title.

The original complaint alleged the same underlying set of facts–concerning the wrongful encumbrance of Lot 21– that appear in his Second Amended Complaint. (Doc. 30.)  The Amended Complaint added OneWest as a Defendant and a claim for Setoff.  (Doc. 4.)  The Second Amended Complaint adds two counts:  Violation of the Truth in Lending Act, and violations of the Montana Consumer Protection Act.  OneWest is mentioned only in the claims for Setoff and Violation of the Truth in Lending Act.  (Doc. 30 at 9, 10.)  All of Rathbun's other claims refer exclusively to IndyMac's pre-failure conduct.  (*Id.* at 5-11.)

The claim for Setoff states that any amount Rathbun owes to OneWest "should be setoff by the amount of damages deemed to have been caused by IndyMac's wrongful encumbrance." (*Id.* at 9.)

The claim for Violation of the Truth in Lending Act is premised on IndyMac's "fail[ure] to properly identify the real property that was encumbered,"

5

(*id.* at 9), and states that the allegations "are properly asserted as affirmative defenses against OneWest's non-judicial foreclosure." (*Id.* at 10.) No mention, however, of any non-judicial foreclosure is made in Rathbun's Statement of Facts. (*Id.* 2-5.) OneWest, furthermore, denies that it seeks to foreclose on Rathbun's mortgage. (Doc. 25 at 7.) Moreover, Rathbun's response to OneWest's motion does not expressly state that OneWest seeks foreclosure, but only asserts that Rathbun "is attempting to prevent OneWest from non-judicially foreclosing on his property." (Doc. 19 at 6.)

### III. SUMMARY CONCLUSION

The Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") applies to OneWest as the purchasing entity of a failed banking institution. FIRREA bars district courts from asserting jurisdiction over all claims relating to acts or omissions of a failed banking institution until after the claimant has exhausted administrative remedies. All of Rathbun's claims, including his claim for Setoff, relate to alleged acts and omissions of the failed institution, IndyMac. Thus, Rathbun's claims are subject to the FDIC's administrative claims processes and the Court lacks jurisdiction to hear them.

Dismissing Rathbun's claims does not violate due process, even if Rathbun did not receive notice of the administrative claims process from the FDIC. Ninth

Circuit case law has addressed this argument and rejected it because 12 U.S.C. § 1821(d)(5)(C)(ii)(I) provides a time extension for filing a claim if one is not given notice.

## IV. STANDARD

"A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998).

## V. ANALYSIS

### A. **FIRREA's Jurisdictional Bar**

OneWest insists that Rathbun's claims fail because the Court lacks subject matter jurisdiction pursuant to the Financial Institutions Reform, Recovery and Enforcement Act. (Doc. 18 at 8.) The first question is whether a purchasing entity, like OneWest, is covered by the Financial Institutions Reform, Recovery and Enforcement Act's jurisdiction limiting provisions.

Section 1821(d)(13)(D) of the Act provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over–
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or

7

> > (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

"The phrase 'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the administrative claims process has been completed." *McCarthy v. FDIC*, 348 F.3d 1075, 1081 (9th Cir. 2003).

In *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1212-15 (9th Cir. 2012), the Ninth Circuit joined sister circuits in expressly holding that § 1821(d)(13)(D)'s jurisdictional bar applies to claims against an assuming bank when the claim is based on the conduct of a failed banking institution. ("We agree with [the Sixth, Eleventh, and D.C.] circuits that FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution.") *Id.*, 673 F.3d at 1214 (citing *Village of Oakwood v. St. Bank & Trust Co.*, 539 F.3d 373 (6th Cir.2008); *Am. First Fed. Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259 (11th Cir.1999); *Am. Natl. Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C.Cir.2011)). The Court quoted *Village of Oakwood* for the proposition that, "permitting claimants to avoid the provisions of [12 U.S.C. § 1821] (d)(6) and (d)(13) by bringing claims against the assuming bank would encourage the very litigation that FIRREA aimed to avoid." *Benson*, 673 F.3d at 1214 (quoting *Village of Oakwood* 539 F.3d at 386). Thus, the Financial

8

Institutions Reform, Recovery and Enforcement Act 's jurisdiction limiting provisions apply to OneWest as the successor in interest of the failed banking institution, IndyMac.

In *Benson*, the Court clarified that § 1821(d)(13)(D)(ii) "distinguishes claims on their factual bases rather than on the identity of the defendant: It asks whether claims 'relate to any act or omission' of a failed institution or the FDIC.'" *Benson*, 673 F.3d at 1212. Consequently the next question is whether Rathbun's claims relate to any act or omission of IndyMac. If so, the claims are jurisdictionally barred by § 1821(d)(13)(D).

Rathbun's complaint makes clear that his claims for Fraud, Constructive Fraud, Slander of Title, Negligent Misrepresentation, Violation of the Truth in Lending Act, and Violation of the Montana Consumer Protection Act relate to acts or omissions of IndyMac. (Doc. 19 at 2.) Each of these claims are rooted exclusively in alleged acts or ommissions of IndyMac. These claims are barred by 12 U.S.C. § 1821(d)(13)(D). Likewise, while Rathbun's Second Amended Complaint asserts that his claim for Violation of the Truth in Lending Act "are properly asserted as affirmative defenses against OneWest's non-judicial foreclosure," (doc. 30 at 10), the claim is entirely based on IndyMac's alleged "fail[ure] to properly identify the real property that was encumbered by the

9

security interest." *Id.* at 9. Therefore, this claim is also barred by 12 U.S.C. § 1821(d)(13)(D).

Rathbun next argues that his claims for fraudulent inducement and setoff are affirmative defenses that "should not be dismissed because they are not subject to the FDIC's administrative claims process." (Doc. 19 at 4.) While no claim is labeled "fraudulent inducement," presumably Rathbun means his claims for Fraud and Constructive Fraud. These claims refer exclusively to acts and omissions of IndyMac, (doc. 30 at 5-7), and are thus barred by the plain language of §1821(d)(13)(D) and *Benson*.

This leaves only Rathbun's claim for Setoff. Rathbun insists that his claim for Setoff survives because it is an affirmative defense against OneWest's non-judicial foreclosure. Relying on *Bolduc v. Beal Bank, SSB*, 994 F.Supp. 82 (D.N.H. 1998) and *RTC v. Midwest Federal Savings Bank*, 36 F.3d 785 (9th Cir. 1993), under his view affirmative defenses are not subject to FIRREA's administrative claims process. (Doc. 19 at 4-7.)

In *Bolduc*, the court construed plaintiff's claims as affirmative defenses when filed in response to foreclosure proceedings instituted by the the defendant-successor bank. *Bolduc*, 994 F.Supp. at 90. In so holding, the court distinguished *National Union Fire Insurance Co. v. City Savings, FSB,* 28 F.3d 376 (3rd Cir.

1994), in which "plaintiffs sought a preemptive judicial determination" that an insurance contract with a failed savings bank was void. *Id.* Rathbun maintains that the "facts of *Bolduc* are virtually identical to the facts presented in this case." (Doc. 19 at 6.)

In *RTC v. Midwest Federal Savings Bank*, plaintiff's claim for mutual mistake was construed as an affirmative defense when asserted as a counterclaim in response to foreclosure proceedings instituted by RTC as receiver of a failed institution. *RTC v. Midwest Fed. Sav. Bank*, 36 F.3d at 791-793. Noting that "mutual mistake consistently has been recognized as an affirmative defense," and using Fed.R.Civ.P. 8(c)'s directive to amend a pleading "if justice so requires," the Court concluded that the claim for mutual mistake was better construed as an affirmative defense. *Id.* at 791-92. The Court based its holding on "the nature of the counterclaim," because the defendant was "attempting to defend itself from personal liability on the note by asserting the defense of mutual mistake." *Id.* at 791. The *RTC* Court held that "12 U.S.C. § 1821(d)(13)(D) does not divest a district court of jurisdiction over an affirmative defense such as mutual mistake" when asserted in response to suits brought by the receiver. *Id.* at 793. Thus the district court's exercise of jurisdiction over the suit was affirmed. *Id.*

Rathbun's claim for Offset is distinguishable from those in *RTC v. Midwest*

11

*Federal Savings Bank* and *Bolduc*, because it is not asserted in response to any proceedings instituted by OneWest. Rathbun refers once to non-judicial foreclosure proceedings in his claim for Violation of the Truth in Lending Act, (doc. 30 at 10), but his claim is not in response to any such filing, and he refers to no such proceedings in his recitation of the facts in his Complaint. (Doc. 30 at 1-5.) Nor does Rathbun mention foreclosure proceedings in his claim for Setoff. (Doc. 30 at 9.) In his response brief, Rathbun insists that "he is attempting to prevent OneWest from non-judicially foreclosing on his property," but does nothing to elaborate on this assertion. (Doc. 19 at 7.) Meanwhile, OneWest denies instituting foreclosure proceedings. (Doc. 25 at 6.) Nowhere, in any of Rathbun's filings, does he affirmatively claim that OneWest has instituted foreclosure proceedings. Rathbun's Setoff claim, like the claimant in *National Union Fire Insurance Co.*, seeks a "preemptive judicial determination," that OneWest cannot assert foreclosure proceedings because of IndyMac's alleged pre-failure conduct.[2] *Bolduc*, 994 F.Supp. at 90,

Whether this is the case, however, need not be answered, because Rathbun's claim for Setoff is distinguishable from those asserted in *Bolduc* and *RTC v.*

---

[2] Because there is no evidence of any foreclosure proceeding, and because the claim is not in response to any such action, Rathbun's claim for Setoff also raises the specter of inviting the Court to issue an advisory opinion.

*Midwest Federal Savings Bank* for another reason–it is entirely dependent on his claims for monetary damages against IndyMac, claims which cannot be asserted in district court pursuant to § 1821(d)(13)(D). Unlike the claim for mutual mistake in *RTC v. Midwest Federal Savings Bank*, Rathbun's claim for Setoff cannot exist without his claim for monetary damages. It is not independent of any of his claims for monetary damages based on IndyMac's pre-failure conduct. The allegation seeks a ruling that "Any amount owed by Rathbun to OneWest under any . . . home equity line of credit . . .associated with the property that is the subject of this action should be setoff by the amount of damages deemed to have been caused by IndyMac's wrongful encumbrance of Rathbun's property." (Doc. 30 at 9.) Again, the claim does not allege that OneWest has instituted foreclosure proceedings. Furthermore, the claim relates to acts or omissions of the failed banking institution, IndyMac, over which the Court lacks jurisdiction pursuant to § 1821(d)(13)(D). All of Rathbun's claims must be dismissed because the Court lacks jurisdiction to hear them.

    **B.**    **Rathbun's Due Process Argument**

Rathbun contends that even if his claims are not considered affirmative defenses, he is not subject to the Financial Institutions Reform, Recovery and Enforcement Act 's exhaustion requirement because he was not given notice of his

13

right to submit a claim to the FDIC. (Doc. 19 at 7.) He argues that the jurisdictional bar only applies when a claimant has been properly notified. (Doc. 19 at 8.) Relying on *Bolduc*, he contends that dismissal of his claim without notice would work a violation of his due process rights under the Fifth Amendment.

Rathbun's reliance on *Bolduc* is misplaced. As the Court in *McCarthy* explained when presented with this precise argument: "we have already held that failure to give notice does not render the administrative claims process inapplicable." *Id.*, 348 F.3d 1075, 1081 (citing *Intercontl. Travel Mktg. v. FDIC*, 45 F.3d 1278, 1284-86 (9th Cir.1994). As the *McCarthy* Court further explained, 12 U.S.C. § 1821(d)(5)(C)(ii)(I) provides an exception to the time limit for asserting claims when a claimant did not receive notice. *Id.*, 348 F.3d at 1081. The *Bolduc* court apparently failed to consider this exception to the time limit. Finally, if Rathbun has a claim for violation of due process rights, it is properly asserted against the FDIC who is obligated to provide notice. OneWest has no such duty and cannot be held liable for the FDIC's failure to provide notice.

Rathbun insists that 12 U.S.C. § 1821(d)(5)(C)(ii)(I) provides no relief for him here because the FDIC has sold Rathbun's loan to OneWest, and therefore

*McCarthy*'s rationale is inapplicable. (Doc. 35 at 5.)[3]  The Court rejected a similar argument in *Benson*: "to the extent plaintiffs assert they currently lack a remedy, that result can only be attributed to their failure to exhaust." *Benson*, 675 F.3d at 1213 (citing *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 486 (8th Cir. 1993) ("Since the language of the statute expressly provides for judicial review after exhaustion of the administrative procedures, [plaintiff] cannot prevail on her claim that FIRREA's administrative procedures deny her due process by making judicial review unavailable.").

### C. OneWest's liability under the controlling Agreements

OneWest takes the position that even if the Financial Institutions Reform, Recovery and Enforcement Act 's jurisdictional bar does not apply to bar Rathbun's claims, the Master Purchasing Agreement and the Servicing Business Asset Purchase Agreement serve to shield OneWest from liability for Rathbun's claims because (1) the FDIC retained liability for all such claims or (2) the Agreements expressly withheld OneWest's liability from such claims. (Doc. 18 at 8-12.) OneWest cites certain liability limiting provisions of the Agreements and interpretive case law. (Doc. 18 at 6, & at 3 fn. 2.)

---

[3] OneWest objects that Rathbun's Renewed Motion to Strike Affirmative Defenses is a "thinly disguised surreply on matters already briefed" that violates L.R. 7.1(d)(1)(D). (Doc. 36 at 2-3.) That view is well taken.

Section 4.02 of the Master Purchase Agreement, entitled "Liabilities Not Assumed by the Purchaser provides in subparagraph (a):

> *Except for the Assumed Group I Liabilities and the liabilities expressly assumed by the Purchaser pursuant to other Definitive Agreements*, the Seller [FDIC] shall not assign and the Purchaser [OneWest] shall not assume any claims, debts, obligations or liabilities (whether known or unknown, contingent or unasserted, matured or unmatured) however the may be characterized, that [IndyMac Bank], IndyMac Federal or the Seller has or may have now or in the future . . .

(Emphasis added.) The "Group I Liabilities" and those "liabilities expressly assumed by the Purchaser" appear in a schedule of which the Court has no record. Similarly, section 2.04 of the Servicing Purchase Agreement, entitled "Excluded Liabilities" provides:

> Notwithstanding anything to the contrary in Section 2.03 it is understood and agreed that the Seller shall not assign and the Purchaser shall not, pursuant to this Agreement, assume or be liable for any Excluded Liabilities that the Seller has or may have now or in the future, including the following:
> (i)    any liabilities or obligations of the Seller attributable to an act, omission or circumstances that occurred or existed prior to the Closing Date, *other than the Assumed Liabilities*;

(Emphasis added.) Again, the Court has no record of the "Assumed Liabilities." Without any record of the Group I Liabilities, the Assumed Liabilities or those liabilities expressly assumed, neither provision quoted above shields OneWest from any liability on its motion for judgment on the pleadings.

However, both the Master Purchase Agreement and the Servicing Purchase Agreement contain provisions that release OneWest from liabilities subject to the Financial Institutions Reform, Recovery and Enforcement Act's claims administration process. These provisions release OneWest from liability for such claims "notwithstanding anything to the contrary." (Doc. 18-3 at 23, § 4.02(b); Doc 18-4 at 22 § 2.04(m)-(n).) Thus, even without knowing what liabilities may have been assumed in the schedule of liabilities, OneWest did not assume liability for any claims subject to the Financial Institutions Reform, Recovery and Enforcement Act's claims administration process. As explained above, all of Rathbun's claims are subject to the mandatory claims administration process pursuant to 12 U.S.C. §1821(d)(13)(D)(ii). Because the Court lacks jurisdiction the case must be dismissed.

## VI. Conclusion

All of Rathbun's claims are related to acts or omissions of IndyMac, a failed banking institution. Pursuant to 12 U.S.C. § 1821(d)(13)(D), the Court lacks jurisdiction to hear these claims prior to exhaustion of administrative remedies. Therefore, the claims must be dismissed.

Rathbun has also filed a Renewed Motion to Strike [OneWest's] Affirmative Defenses. (Doc. 35.) Rathbun contends that OneWest's defense of failure to

exhaust administrative remedies should be stricken because "Rathbun was [not] given timely notice of his right to pursue administrative remedies from the FDIC." (Doc. 35 at 3.) As explained above, failure to provide notice does not excuse Rathbun from the administrative claims process or vest jurisdiction in this Court. *See McCarthy*, 348 F.3d at 1081; *Benson*, 675 F.3d at 1213. Thus, Rathbun's motion is without merit. Because granting OneWest's Motion for Judgment on the Pleadings dispenses with all of Rathbun's claims, it is unnecessary to address Rathbun's other contention that the Court should strike OneWest's defense that it cannot be held liable because it is not the real party in interest. (Doc. 35 at 11.)

The Motion for Judgment on the Pleadings (doc. 17) is GRANTED. The Renewed Motion to Strike (doc. 34) is DENIED.

The Clerk is directed to notify the parties of the entry of this order and to close the file. All other motions, if any, are DENIED as moot.

Dated this 4th day of January 2013.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT